UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DARIUS ARMOND DIAZ-GASKIN,

                    Petitioner,                    Case No. 1:18-cv-1091

v.                                                 Honorable Janet T. Neff

GREG SKIPPER,

                    Respondent.

_____/

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.      Factual Allegations

Petitioner Darius Armond Diaz-Gaskin is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Michigan. Following a jury trial in the Macomb County Circuit Court, Petitioner was convicted of first-degree murder, Mich. Comp. Laws § 750.316b; armed robbery, Mich. Comp. Laws § 750.529; conspiracy to commit armed robbery, Mich. Comp. Laws § 750.529; and use of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. On August 4, 2015, the court sentenced Petitioner to prison terms of life without parole for the murder convictions and 23 years and 9 months to 50 years for the armed robbery and conspiracy convictions. The trial court ordered those sentences to be served concurrently, but consecutively to a 2-year sentence for the felony firearm conviction.

Petitioner, Kenneth Dawayne Hill, and Jomar Davell Robinson, were tried together, before one Macomb County jury, for their respective roles in the robbery of a Clinton Township convenience store on March 28, 2014.[1] The Michigan Court of Appeals described the underlying facts as follows:

> Before the robbery, defendants gathered at Hill's apartment, then proceeded to the store in Hill's car. The store's surveillance footage showed three individuals—later identified as Grayson, Robinson, and Diaz-Gaskin—enter the store wearing dark clothing, gloves, and masks. The masked men placed "a block in the door to stop the door from locking behind them," presumably to defeat a push-button security device used by some stores that locks intruders inside when an alarm button is pressed. The first two men to enter the store were wielding firearms before they entered. The third masked man, Robinson, removed a red bag from under his shirt and appeared to be unarmed.

---
[1] A fourth individual, Clinton Rayshawn Grayson was tried separately, by stipulation, a couple of months before the trial of Petitioner, Hill, and Robinson. He was also found guilty of felony murder, armed robbery, conspiracy to commit armed robbery, and felony firearm.

The victim emerged from a rear office area, and Diaz-Gaskin jumped onto the countertop, began to "track[]" the victim with the muzzle of his handgun, and fired a single round, which struck the victim. The gunshot wound was necessarily fatal.

After he was shot, the victim fell to the ground, and Diaz-Gaskin subsequently aimed his semi-automatic handgun down at the victim's prone body. Due to a malfunction, however, Diaz-Gaskin's weapon could not be fired again immediately. Robinson removed money from the cash register, depositing it in the bag he carried, and the masked men fled. A passerby, who noticed the men fleeing the store, promptly called the police and reported the incident as a suspected robbery. A responding officer discovered the victim dead on the floor of the store.

According to Detective Dan Quinn of the Clinton Township Police Department, the police originally had little information about the masked men, and thus had no initial suspects. But the police ultimately received 74 "tips" regarding the robbery, several of which implicated defendants. After investigating and surveilling defendants, the police became convinced that Grayson and defendants were the perpetrators of the robbery, and all four suspects were arrested.

After obtaining *Miranda* waivers, Detective Quinn and Detective Brian Gilbert performed a custodial interrogation of each of the four suspects. Defendants all initially denied any involvement in the robbery, but each subsequently confessed to his role.

Robinson stated that he was unarmed during the robbery, and "didn't see the guns" carried by Grayson and Diaz-Gaskin. But Robinson acknowledged that he "knew" Grayson and Diaz-Gaskin were armed before the robbery occurred.

Diaz-Gaskin denied that he had intended to shoot the victim, claiming that his handgun had accidentally discharged. Diaz-Gaskin stated that he "thought he had the safety" of that weapon engaged and believed that his finger was not on the trigger, but when he "went to strike the victim" with the gun, it accidentally discharged. Contrastingly, based on the fact that Diaz-Gaskin "tracked" the victim with the muzzle of the semi-automatic handgun before firing, Detective Quinn opined that the shooting was not accidental but was, rather, a deliberate act. Diaz-Gaskin admitted that he was in possession of the semiautomatic handgun at Hill's apartment before the robbery and in Hill's car on the drive to the robbery. Diaz-Gaskin also penned a confession letter, expressing his remorse.

Hill provided the police with both a written confession of his involvement as the driver and an oral confession.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.154-155) (footnotes omitted). The jury convicted each defendant of the same four criminal charges.

Each of the three defendants, with the assistance of counsel, directly appealed his

convictions to the Michigan Court of Appeals. That court consolidated the appeals. Petitioner,

with the assistance of counsel, raised one issue for the court's consideration:

> I.     Defendant was denied the effective assistance of counsel [1.] when trial
> counsel failed to file a motion for separate juries when on jury determined
> the fate of three defendants with antagonistic and irreconcilable theories and
> [2.] when trial counsel failed to file a motion to suppress Defendant's
> statement.

(Pet'r's Br. on Appeal, ECF No. 2-1, PageID.104.) Petitioner filed a pro per supplemental

Standard 4 brief[2] raising three additional issues:

> II.    [Defendant] was denied his state and federal due process rights where his
> conviction for felony murder is not supported by sufficient evidence
> therefore his conviction must be vacated.
>
> III.   [Defendant] was denied effective assistance of counsel when defense
> counsel's inadequate advice caused him not to testify on his own behalf
> which deprived him of his [rights under the] Fifth, Sixth, and Fourteenth
> Amendment of the U.S. Constitution and Art. 1 § 17 & 20 of the Michigan
> Constitution.
>
> IV.    [Defendant] was denied the right to a properly instructed jury where the trial
> court failed to instruct on all the elements of the necessarily included lesser
> offense of second degree murder.

(Pet'r's Standard 4 Br. on Appeal, ECF No. 2-1, PageID.129.) In an unpublished opinion issued

February 9, 2017, the court of appeals rejected all of Petitioner's challenges, as well as the

challenges of Petitioner's co-defendants, and affirmed the convictions and sentences. (Mich. Ct.

App. Op., ECF No. 2-1, PageID.153-169.)

Petitioner then filed an application for leave to appeal in the Michigan Supreme

Court raising the same issues he had raised in the court of appeals. (Pet'r's Appl. for Leave to

---

[2] Michigan Supreme Court Administrative Order 2004-6 sets forth minimum standards for indigent criminal appellate defense services. Standard 4 requires counsel to inform a defendant of his right to present claims in a brief filed *in propria persona* that counsel will not present. Mich. Admin. Order No. 2004-6.

Appeal, ECF No. 2-1, PageID.70-94.) The supreme court denied leave by order entered September 12, 2017. (Mich. Order, ECF No. 2-1, PageID.170.)

On September 17, 2018, Petitioner timely filed his habeas corpus petition raising the same four issues in raised in the state appellate courts. (Pet., ECF No. 1, PageID.4-8.)

II.    AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.

*Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct, at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Trial Counsel's Assistance

Petitioner raises three distinct challenges to the effectiveness of his trial counsel. First, Petitioner claims counsel rendered ineffective assistance because he did not move to sever Petitioner's trial from that of his co-defendants nor did he move for a separate jury for Petitioner. Second, Petitioner contends counsel rendered ineffective assistance because counsel did not move to suppress Petitioner's confession. Third, Petitioner complains that counsel rendered ineffective assistance when he intimidated Petitioner into not testifying on his own behalf.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102). Petitioner's claims cannot survive the double deference this Court must accord the determinations of the Michigan Court of Appeals.

### A.  Separate Trials or Juries

The Michigan Court of Appeals, after identifying the standard for evaluating ineffective assistance claims, concluded that Petitioner's counsel was not ineffective for foregoing a motion for separate trials or separate juries. The state appellate court did not, in considering Petitioner's claim, look at the merits of such a motion. Instead, the court jumped ahead to the prejudice analysis:

> We need not reach the issue of whether counsel's performance in this regard fell below an objective standard of reasonableness under prevailing professional norms. Even assuming, arguendo, that Diaz-Gaskin's trial counsel should have filed a motion to sever, Diaz-Gaskin is nevertheless unentitled to a new trial on that ground. Diaz-Gaskin confessed his involvement in the robbery, both orally and in writing. Given such overwhelming evidence of guilt, Diaz-Gaskin has demonstrated no reasonable probability that, had he been tried separately or before a separate jury, the result of the proceedings below would have been different. For that same reason, Diaz-Gaskin has not shown that the result below was fundamentally unfair or unreliable.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.166.) The state appellate court's conclusion is unassailable. Petitioner was convicted based on his own confession and the store security video of the crime. That evidence would have been admissible even if Petitioner were tried separately.

The court of appeals' analysis gets to the heart of the risk that befalls a defendant when he is tried jointly with co-defendants: will the evidence relating to co-defendants unfairly influence the verdict. There is no decision of the United States Supreme Court clearly establishing a right under the Due Process Clause to separate trials or juries. Joint trials play a vital role in the criminal justice system. *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Joint trials generally serve the interests of justice by avoiding inconsistent jury verdicts and facilitating the efficiency and fairness of the criminal justice system. *Id.* at 209–10.

The Supreme Court has delineated few constitutional rules in this area. The Court has held that separate trials are constitutionally required where the prosecution intends to introduce the confession of a co-defendant which incriminates another defendant. *See Bruton v. United States*, 391 U.S. 123, 137 (1968). The *Bruton* decision is premised on the reality that a juror cannot be expected to take into account a defendant's confession with respect to the confessor but blithely disregard it with respect to a co-defendant that is implicated by the confessor.

The constitutional foundation of the *Bruton* decision is the Confrontation Clause. Thus, if no out-of-court statements of a co-defendant is introduced; if the out-of-court statements do not implicate another co-defendant; or if the co-defendant whose out-of-court statement is introduced is subject to cross-examination, there is no Confrontation Clause problem.

Here, Petitioner does not point to any out-of-court confession by his co-defendants that specifically implicated him. Based on his counsel's recitation of the facts, it appears the prosecutor worked to avoid the *Bruton* problem by only soliciting testimony about the confessions

to the extent the testimony inculpated the confessor and did not specifically implicate a co-defendant. *See Richardson v. Marsh*, 481 U.S. 200, 208-09 (1987) ("[*Bruton* is] limited to facially incriminating confessions . . . [and] can be complied with by redaction—a possibility suggested in that opinion itself."); *see also United States v. Robinson*, 872 F.3d 760, 776-79 (6th Cir. 2017).

Petitioner's argument supports the conclusion that the prosecutor never ran afoul of *Bruton*. Petitioner never refers to the out-of-court statements of his co-defendants in raising this claim. Instead, he refers to the arguments of counsel. Counsel for co-defendant Hill and counsel for co-defendant Robinson both presented arguments intended to diminish their clients' respective culpability for the crimes by distinguishing their clients' limited participation from the more involved roles of the gunmen. Such argument, however, cannot give rise to a *Bruton* problem because arguments of counsel are not evidence and, thus, never present a Confrontation Clause issue. *See, e.g., United States v. Crowe*, 614 F. App'x 303, 307 (6th Cir. 2015).

Beyond the *Bruton* rule, the Supreme Court has left the matter of severance to state law and the trial judge's discretion. The Court remarked in *United States v. Lane*, 474 U.S. 438 (1986), that the denial of a motion for severance does not in and of itself implicate constitutional rights. The Constitution is implicated only when the failure to sever trials is so prejudicial that it imperils a defendant's right to a fair trial. *Id.* at 446 n.8. Consequently, a "petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendants bears a very heavy burden." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

Although Petitioner did not move to sever the trials, his co-defendant Robinson did. Robinson argued that even if his defense and the defense of his codefendants were not entirely inconsistent, the evidence admitted against his co-defendants would "spillover" to prejudice him.

Nonetheless, the trial court denied the motion. The Court of Appeals affirmed that decision, quoting extensively from *People v. Bosca*, 871 N.W.2d 307 (Mich. Ct. App. 2015):

> [Robinson's] "spillover" argument is directly contravened by this Court's recent decision in *Bosca*:
>
> > There is no absolute right to separate trials, and in fact, a strong policy favors joint trials in the interest of justice, judicial economy, and administration. Severance should be granted when defenses are antagonistic. A defense is deemed antagonistic when it appears that a codefendant may testify to exculpate himself and to incriminate the defendant. Further, defenses must be not only inconsistent, but also mutually exclusive or irreconcilable. In other words, the tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other. Incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice. [*Bosca*, 310 Mich. App. at 43–44 (quotation marks, citations, and brackets omitted; emphasis added).]

(Mich. Ct. App. Op., ECF No. 2-1, PageID.164.) Petitioner does not identify a single instance where the evidence or argument revealed mutually exclusive or irreconcilable defenses among the three defendants. Thus, as was the case with Mr. Robinson's motion, under state law, Petitioner's proposed motion to sever would have been meritless. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Under either prong of the *Strickland* analysis, the state court's determination that counsel had <u>not</u> rendered ineffective assistance by <u>not</u> filing a motion to sever is consistent with—and not contrary to, or an unreasonable application of—*Strickland*. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## B.     Motion to Suppress Petitioner's Confession

Petitioner next contends that his counsel rendered ineffective assistance because counsel never filed a motion to suppress Petitioner's confession. The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held

that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). Even so, "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid *Miranda* waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Texas v. Cobb*, 121 S. Ct. 1335, 1342 (2001) (quotation and citation omitted). The cases in which a defendant can make a colorable argument that a confession was compelled despite the fact that law enforcement authorities adhered to *Miranda* are rare. *Dickerson v. United States*, 530 U.S. 428, 444 (2000) (citation omitted).

When a criminal defendant claims that his confession was rendered involuntary by police coercion, the court must inquire whether, considering the totality of the circumstances, the conduct of law enforcement officials overbore the will of the accused. *See Mincey v. Arizona*, 437 U.S. 385 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). A suspect's state of mind, standing alone, cannot render a statement involuntary. Rather, coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. *See Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986). Typically, findings of coercive police conduct involve brutality or threats of physical coercion. *See, e.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991) (threats of physical violence); *Greenwald v. Wisconsin*, 390 U.S. 519 (1968) (defendant interrogated for eighteen hours without food or sleep while on medication); *Beecher v. Alabama*, 389 U.S. 35

(1967) (gun held to head of wounded suspect to extract confession); *Cooper v. Scroggy*, 845 F.2d 1385 (6th Cir. 1988) (officer struck defendant, failed to take steps to change coercive environment, and other detective threatened defendant). Nevertheless, a confession may be rendered involuntary if it is the product of psychological pressure or coercion sufficient to overbear the will of the accused. *See Fulminante*, 499 U.S. at 287-88. Among the circumstances to be reviewed by the habeas court are "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health." *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (citations omitted).

Coercion might take the form of an illusory promise of leniency. *United States v. Johnson*, 351 F.3d 254, 262 (6th Cir. 2003). But, general statements that cooperation is in a defendant's best interests, or that information regarding such cooperation will be shared with the judge and prosecutor and may augur to the defendants' benefit, do not amount to a coercive promise that the defendant will receive something in exchange for his cooperation. *See, e.g., United States v. Binford*, 818 F.3d 261, 271-72 (6th Cir. 2016); *United States v. Stokes*, 631 F.3d 802, 808 (6th Cir. 2011). Whether or not a promise of leniency renders a confession coerced depends "on the totality of the circumstances." *Stokes*, 631 F.3d at 808.

Petitioner contends that his written request for forgiveness was prompted by the interviewing officer's statements implying that the judge sentencing Petitioner would take Petitioner's cooperation into account. Petitioner argues that the statement is a promise of leniency rendered illusory by the mandatory life without parole sentence for the charged crime of felony murder. Thus, Petitioner concludes, his counsel rendered ineffective assistance because counsel did not move to suppress the coerced confession.

The Michigan Court of Appeals concluded that Petitioner had failed to carry his

burden to show that counsel's failure to file a motion to suppress was professionally unreasonable:

> Despite the fact that he bears the burden of proving the factual predicate for his claim of ineffective assistance, see *Hoag*, 460 Mich at 6, Diaz-Gaskin has failed to provide this Court with the video recording or transcript of his custodial interrogation. Hence, he cannot overcome the strong presumption that his trial counsel performed effectively. "[C]ounsel cannot be faulted for failing to raise an objection or motion that would have been futile," *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998), and without a complete record of the totality of the circumstances surrounding Diaz-Gaskin's custodial interrogation, it is impossible to gauge whether a motion to suppress his confession might have been successful, see *Tierney*, 266 Mich App at 707 ("Whether a defendant's statement was knowing, intelligent, and voluntary is a question of law, which the court must determine under the totality of the circumstances.").

(Mich. Ct. App. Op., ECF No. 2-1, PageID.167.)

The court of appeals' concern is well-grounded. His entire argument to the state

appellate court is premised on these words from the interviewing officer:

> [W]hat I can tell you is this, you're being charged with felony murder, okay. Within that range of charges, the judge can look at guidelines based on investigation, based on your attitude, based on your remorse, based on your criminal history, right, based on points of circumstances, and the judge can determine the range.

(Pet'r's Br. on Appeal, ECF No. 201, PageID.122.) Yet those words appear to have prompted

only Petitioner's written apology. Petitioner had admitted his involvement in the robbery during

the interview prior to his written confession letter.

Petitioner argues that because the officer never informed Petitioner that felony

murder requires a mandatory sentence of life without parole, his insinuation that a confession

might yield a lighter sentence was illusory. But, the fact that Petitioner was charged with, and

ultimately convicted of, felony murder, does not mean that a felony murder charge, or conviction,

was the only possible outcome. First, Petitioner was also convicted of other offenses. The

sentencing guidelines impacted the sentences for those offenses. Second, Petitioner argued in the

state appellate courts that his confession established the elements of, at most, voluntary

manslaughter. (Pet'r's Appl. for Leave to Appeal, ECF No. 2-1, PageID.82.) The sentencing guidelines would have also been relevant to that offense if Petitioner had prevailed in his argument.

Even if the interviewer's two-sentence statement were improper, one cannot claim that a confession is coercive based on just those two sentences. The state authorities and the federal authorities cited above require that the evaluation be made on the totality of the circumstances. A claim that counsel failed to move to suppress a coercive confession, likewise, depends upon whether counsel's failure to file the motion was professionally unreasonable in light of the totality of the circumstances. Where Petitioner provides only a self-serving snippet, he has not met his burden.

For all of the foregoing reasons, the state appellate court's determination that Petitioner had failed to demonstrate his counsel was ineffective on this ground was neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief on this claim.

## C.  Forcing Petitioner to Not Testify

Petitioner claims that he wanted to testify but his attorney intimidated him into giving up that right. Petitioner argues that it was ineffective assistance for his counsel to convince Petitioner to not testify.

The state appellate court rejected Petitioner's argument on two levels. First, the Court rejected the claim that counsel "convinced" Petitioner to not testify. There was no record evidence to support the claim. (Mich. Ct. App. Op., ECF No. 2-1, PageID.167.) The court refused to consider Petitioner's affidavit submitted for the first time on appeal. (*Id.*) Petitioner's statements on the record belied his claim. The trial court asked Petitioner if it was his decision to not testify; Petitioner confirmed that it was. (*Id.*)

Second, the court of appeals determined that even if counsel had convinced Petitioner to not testify, Petitioner had failed to show that such advice was professionally unreasonable. (*Id.*) Petitioner told the Michigan appellate courts that, if he had taken the stand, he would have testified:

> [I]t was not [my] intention to shoot the victim and [I] was unaware that the weapon was loaded when it was given to [me] by co-defendant Clinton Greyson. . . . [T]he plan was to have the weapons unloaded, even during the robbery. [I] would have informed the jury that [my] co-defendants were all under the same impression and . . . it wasn't until after the weapon discharged that [I] realized that the weapon had ammunition in it. . . . [T]he only person who had access to the weapons was Mr. Greyson, who, unbeknownst to [me], had loaded the weapon prior to giving it to [me].

(Pet'r's Appl. for Leave to Appeal, ECF No. 2-1, PageID.93; Pet'r's Standard 4 Br., ECF No. 2-1, PageID.142-143.)

In his submission to this Court, Petitioner provides an important additional detail that he left out in the state courts: Petitioner had no memory of the incident because he had been intoxicated. (Pet'r's Br., ECF No. 2, PageID.32.) His confession, he now reports, was based on what his codefendants told Petitioner. (*Id.*) Petitioner knew every part of his anticipated testimony—the testimony quoted above—because his codefendants told him so, after the fact. (*Id.*, PageID.33.) Petitioner told his counsel about his intoxication and his lack of any personal recollection. (*Id.*, PageID.32.)[3]

Under those circumstances, advising Petitioner to forego his right to testify was not professionally unreasonable. Moreover, Petitioner can demonstrate no prejudice that resulted from following that advice. Therefore, the state appellate court's conclusion that Petitioner had failed

---

[3] Petitioner's voluntary intoxication would not be a defense to the crimes. Only involuntary intoxication can serve as a defense to a specific intent crime—"involuntary intoxication is intoxication that is not self-induced and by definition occurs when the defendant does not knowingly ingest an intoxicating substance, or ingests a substance not known to be an intoxicant." *People v. Smith*, No. 322283, 2015 WL 5952074, at *3 (Mich. Ct. App. Oct. 13, 2015) (quoting *People v. Caulley*, 494 N.W.2d 853, 859 (1992)).

to demonstrate that counsel rendered ineffective assistance was neither contrary to, nor an unreasonable application of, *Strickland*. Petitioner is not entitled to habeas relief on this claim.

IV.     Sufficiency of the Evidence of Petitioner's Malice

Petitioner claims that the evidence at trial established that the store owner's death was "accidental at best." (Pet'r's Standard 4 Br., ECF No. 2-1, PageID.137.) The Michigan Court of Appeals concluded otherwise:

> There are three essential elements for felony murder: (1) "the killing of a human being," (2) with malice, i.e., "with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result," (3) "while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b)." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009); see also *People v Comella*, 296 Mich App 643, 651-652; 823 NW2d 138 (2012).
>
> After jumping onto the countertop, Diaz-Gaskin "tracked" the victim before firing, and based on such behavior, Detective Quinn opined that the shooting was a deliberate act. Also, after the victim was shot and fell to the ground, Diaz-Gaskin continued to aim his handgun at the victim. Based on such conduct, a rational trier of fact could infer that Diaz-Gaskin intended to shoot the victim, and thus acted with malice.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.167-168) (footnote omitted).

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific

reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). Petitioner does not come close to overcoming that hurdle.

The state appellate court's analysis tracks the clearly established law set out in *Jackson*. The court identifies the elements of the crime and, focusing specifically on the element of "malice" as urged by Petitioner, then examines the evidence in a light most favorable to the prosecution. Although the state court relies on the testimony of the officer who opined that Petitioner's "tracking" of the victim demonstrated intent, the court could have also relied on the video alone to support the same conclusion.

Petitioner does not claim that the inference of intent from the evidence was not reasonable; instead, he claims that one could draw other inferences—inferences that favor him. For example, Petitioner acknowledges that he "tracked" the victim with his weapon, but Petitioner claims that his purpose "was not to shoot him, but only to intimidate him into complying with their

demands." (Pet'r's Standard 4 Br., ECF No. 2-1, PageID.138.) Petitioner claims that evidence showing the robbers blocked the doorway also supports the inference that he did not intend to kill the store owner. (*Id.*, PageID.139-140.) If he had intended to kill the store owner, there would have been no need to block the door. (*Id.*)

Petitioner's statements regarding these other possible inferences are not wrong, they are simply misdirected. Petitioner attempts to turn *Jackson* on its head by viewing the evidence in a light most favorable to him. That is not the appropriate standard. Viewed in a light that favors the prosecution, the evidence before the jury was sufficient to find, beyond a reasonable doubt, that Petitioner intended to kill the victim. The state appellate court's determination to that effect is neither contrary to, nor an unreasonable application of, *Jackson*. Accordingly, Petitioner is not entitled to habeas relief on his sufficiency claim.

## V.     Second-Degree Murder Jury Instructions

Finally, Petitioner argues that he was denied due process and his right to trial by jury when the trial court left off an element in his instructions regarding the lesser included offense of second-degree murder. Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. "Before a federal court may overturn a conviction resulting from a state trial in which [the challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The Supreme Court has defined the subcategory of instructional errors that warrant habeas relief very narrowly. *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.").

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated. *Sandstrom v. Montana*, 442 U.S. 510 (1979). It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. ").

Similarly, the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). Nonetheless, it is also the prerogative of the state to define whether or not a defense applies to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .")

Finally, the Due Process Clause requires providing lesser included offense instructions in <u>capital</u> cases. *Beck v. Alabama*, 447 U.S. 625 (1980). Lesser included offense instructions were also required in <u>noncapital</u> cases under the English common law and they are

still required under the common law or by statute in every state and in the federal courts, if and when the evidence supports it. *Id.* at 633-34, 636 n. 11, 12.

Even though the courts of this nation are in complete accord as to the propriety of lesser included offense instructions, the Supreme Court has never held that lesser included offense instructions are required as a matter of constitutional due process in noncapital cases. *Id.* at 638 n.14; *see also Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc) ("[The failure to instruct on lesser included offenses in noncapital cases [is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]").

Although giving a lesser included offense instruction was not constitutionally required by clearly established federal law in Petitioner's case, the trial court gave the jury instructions regarding second-degree murder, a lesser included offense of first-degree murder under Michigan law:

> Each Defendant [is] charged with the crime of first degree felony murder. You may also consider the lesser charge of second degree murder. To prove this charge the Prosecutor must prove each of the following elements as to each Defendant beyond a reasonable doubt. First that each Defendant caused the death of Basim Sulaka. That is that Basim Sulaka died as a result of a gunshot wound.
>
> Second, that each Defendant had one of these three states of mind. He intended to kill or he intended to do great bodily harm to Basim Sulaka or he knowingly created a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of his actions.

(Pet'r's Appl. for Leave to Appeal, ECF No. 2-1, PageID.95-96.) Petitioner complains the trial court's instruction conveyed three of the elements of second-degree murder—(1) death, (2) caused by the Defendant, (3) with malice—but left off a fourth—(4) without justification or excuse. (*Id.*)

The Michigan Court of Appeals rejected Petitioner's argument for two reasons:

> Diaz-Gaskin is correct that the trial court's second-degree murder instruction did not state all of the elements associated with second-degree murder. See *People v*

*Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015) ("The elements of second-degree murder are '(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death.'") (emphasis added), quoting *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). However, as is recognized in the use notes accompanying the pertinent model jury instruction, M Crim JI 16.5, the fourth element (i.e., absence of a lawful justification or excuse for the homicide), "may be omitted if there is no evidence of justification or excuse, and the jury is not being instructed on manslaughter or any offense less than manslaughter." Given the dearth of evidence of any lawful justification or excuse for the victim's murder, and the fact that Diaz-Gaskin was not charged with manslaughter or any offense less than manslaughter, it seems that the trial court did not plainly err by omitting the fourth element for second-degree murder.

Additionally, even assuming that the trial court's failure to give the element in question did constitute plain error, Diaz-Gaskin's instant claim of error nevertheless fails because the purported error did not prejudice his substantial rights. If anything, the inclusion of the fourth element for second-degree murder would have made it more difficult for the jury to find Diaz-Gaskin guilty of that lesser included offense instead of felony murder. It is, after all, less difficult to satisfy three elements than to satisfy four. In other words, the failure to instruct the jury on all four elements of the lesser included offense of second-degree murder actually favored Diaz-Gaskin. That the jury nevertheless found him guilty of felony murder—not second-degree murder—is conclusive that the purported instructional error did not prejudice Diaz-Gaskin. See *People v Orlewicz*, 293 Mich App 96, 110-111; 809 NW2d 194 (2011) ("Given that defendant was convicted of the alternative theory of first-degree premeditated murder, for which the jury received a lesser-offense instruction on second-degree murder, defendant cannot establish that he was prejudiced by counsel's failure to request a second-degree-murder instruction.").

(Mich. Ct. App. Op., ECF No. 2-1, PageID.168-169) (footnote omitted).

Petitioner's instructional challenge is atypical. It is far more common for a criminal defendant to complain that the trial court left off an element when instructing a jury regarding an offense and, as a result, the jury found the defendant guilty of the offense. Petitioner is complaining that the trial court left off an element and then the jury did not find him guilty of the offense. The Michigan appellate court recognized the logical inconsistency of Petitioner's argument. The trial court's purported error made it *easier* for the jury to find Petitioner guilty of

second-degree murder. That is the result Petitioner wanted. Thus, Petitioner could never demonstrate prejudice.

Moreover, Petitioner does not contend that the court of appeals was wrong in the sense that there was, indeed, evidence of justification or excuse for his shooting of the store owner. Petitioner simply stands on his argument that the standard instruction has four elements and the court only read three of them. As noted by the Michigan appellate court, there was no error in the court's decision to forego reading a portion of the instruction where there was no evidence to support it. "It is a well-established rule in federal criminal trials that 'a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor,' . . . ." *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002) (quoting *Mathews v. United States*, 485 U.S. 58, 63-64 (1988)). But, there is no rule that requires a court to instruct regarding a defense where there is no evidence to support it. *See, e.g., Delo v. Lashley*, 507 U.S. 272, 277 (1993) ("Nothing in the Constitution obligates state courts to give mitigating circumstance instructions when no evidence is offered to support them.").

Petitioner has failed to demonstrate that the state appellate court's determination that Petitioner was not entitled to an instruction regarding the fourth second-degree murder element is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on this issue.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated:  October 11, 2018          /s/ Janet T. Neff
                                  Janet T. Neff
                                  United States District Judge